## A06A1223. THE STATE v. CARDEN.
(637 SE2d 493)

PHIPPS, Judge.

The state appeals the sentence imposed upon Deborah Lee Carden for methamphetamine trafficking, contending that it is void. The state has only a limited right of appeal in criminal cases,[1] and OCGA § 5-7-1 (a) enumerates the circumstances.[2] In this case, the state relies upon paragraph (5) of that subsection, pursuant to which it may contest a void sentence.[3] Therefore, we will review this case in light of the state's contention that the trafficking sentence is void.[4]

"A sentence is void if the court imposes punishment that the law does not allow."[5] The state argues that the trafficking sentence is void because it is less than the mandatory minimum set forth in OCGA § 16-13-31 (e) (1). But the trial court gave Carden a reduced sentence under OCGA § 16-13-31 (g) (2) based upon its finding that she had rendered substantial assistance in the identification of her supplier, known as Malik. Contrary to the state's argument, this finding was authorized and thus did not result in an illegal departure from OCGA § 16-13-31 (e) (1). Because Carden's sentence is not void and this appeal is not within any other circumstance listed by OCGA § 5-7-1 (a), this appeal must be dismissed.[6]

The trial evidence showed that informants working with a narcotics officer of a city police department arranged to purchase one ounce of methamphetamine through a suspected drug dealer, Ted Oliver. Oliver called upon Carden to bring the methamphetamine to a motel parking lot on July 31, 2004. She arrived at the designated time and discussed with Oliver the exchange of money for the methamphetamine. An informant with Oliver was wired for audio transmission to an officer, who soon determined that Carden had brought the methamphetamine and thus signaled concealed police officers to detain Carden and Oliver.

Carden was arrested, informed of the undercover drug operation, and advised of her *Miranda* rights. She agreed to talk to the arresting narcotics officer and did not thereafter refuse to answer any question he posed. He asked her whether any drugs were in her vehicle. She said that there were, pointed to a cigarette pack on a seat, and

---

[1] *Howard v. Lane*, 276 Ga. 688 (581 SE2d 1) (2003).

[2] *Moody v. State*, 272 Ga. 55, 57 (2) (525 SE2d 360) (2000).

[3] Id.; *State v. Jones*, 265 Ga. App. 493 (594 SE2d 706) (2004).

[4] See generally *State v. Johnson*, 183 Ga. App. 236 (358 SE2d 840) (1987) (physical precedent only).

[5] *Crumbley v. State*, 261 Ga. 610, 611 (1) (509 SE2d 517) (1991).

[6] See *Moody*, supra; *In the Interest of J. H.*, 228 Ga. App. 154, 155 (491 SE2d 209) (1997).

consented to a search of her vehicle. The officer found methamphetamine in the cigarette pack. During a patdown of Carden, the officer pulled from her pocket two baggies of methamphetamine, which she acknowledged were for her personal use. During the parking lot investigation, about 30 minutes after Carden arrived, her cell phone rang. The officer questioning Carden observed that the name "Malik" was displayed on her phone's caller ID screen. He asked Carden whether the caller was the person who had supplied her with the methamphetamine. She answered that he was and that she believed he was at her house. The officer instructed Carden to answer her phone and tell Malik that everything was okay. Carden complied. A police search through the call history stored in Carden's cell phone showed that during the four hours before Carden arrived at the parking lot, she and Malik had exchanged about eight phone calls.

The officer testified, "I never had heard of the Malik person until we took Ms. Carden into custody, I'd never heard of him before." In an attempt to apprehend Carden's supplier, he sent policemen to her residence, which he had already determined was "fairly near." He asked Carden whether there were drugs at her residence. She answered that there might be and consented to a search of her home. There, the police found, stored together, methamphetamine, scales, and ziplock bags. The weight of all the seized methamphetamine totaled approximately 37 grams. But there was no one named Malik at Carden's residence.

Later, at the police department, Carden signed a *Miranda* waiver and then gave a statement that she had been involved in the earlier drug deal to sell an ounce of methamphetamine, that Malik had supplied her with the drug, that she was a methamphetamine abuser, and that she had recently begun selling the drug. According to the officer who had organized and led the sting, questioned Carden at the parking lot, and taken her statement at the police department, Carden was "very cooperative in this whole thing."

Carden testified that on the day in question, Oliver asked her to get methamphetamine from Malik for a friend of his. Malik came to her house with the drug and weighed an ounce of it, which she stashed into a cigarette pack and carried the "block, block and a half" to the motel parking lot to meet Oliver. For her role in this drug transaction, she received from Malik the methamphetamine later seized from her pocket and his promise to pay her some of the money expected from Oliver. She then left Malik at her house, and when he called her during the parking lot investigation, she said to him only what the police had instructed. Carden admitted at trial, however, that she had signaled to Malik with a change in her voice that there was a problem because she did not want to cause him trouble. She confirmed, "I'm sure he knew something was wrong." Carden further

testified that Malik had since stopped communicating with her because "I got in trouble[;] I guess he figures that I'll get him in trouble."

The police opened an investigation on Malik and learned where "Malik like[d] to sort of hang out." But he was never apprehended, and according to the narcotics officer who had led the investigation underlying the instant case, the investigation concerning Malik had been placed on a "back burner."

Carden was charged and found guilty of methamphetamine trafficking by possessing more than 28 grams of the drug.[7] The applicable Code section for sentencing a person adjudicated guilty of that crime is OCGA § 16-13-31. Paragraph (e) (1) provides that where, as here, the quantity of the substance is at least 28 grams, but less than 200 grams, "the person shall be sentenced to a mandatory minimum term of imprisonment of ten years and shall pay a fine of $200,000.00."[8] Imposition of this sentence "shall not be suspended, probated, deferred, or withheld prior to serving the mandatory minimum term of imprisonment," except as provided in OCGA § 16-13-31 (g) (2).[9] That paragraph allows the trial court to impose a "reduced or suspended sentence" upon its finding that the defendant has provided "substantial assistance in the identification, arrest, or conviction of any of his accomplices, accessories, coconspirators, or principals."[10]

At the sentencing hearing, Carden's counsel sought a reduced sentence pursuant to OCGA § 16-13-31 (g) (2).[11] She argued that Carden had provided substantial assistance in the identification of an accomplice by revealing to police the name and location of her supplier, Malik. The prosecutor countered that Carden's actions did not amount to substantial assistance under OCGA § 16-13-31 (g) (2) and repeatedly stated that Malik was never arrested or convicted. He elicited testimony from the lead narcotics officer that Carden had provided no assistance pertaining to Malik after the day of her arrest. He recounted that, after Carden was arrested, she agreed to assist the police in apprehending Malik if released on bond. Because of her promise, Carden was granted and released on a low bond. Also, her

---

[7] Carden's other charge and sentence are not at issue in this appeal.

[8] OCGA § 16-13-31 (e) (1).

[9] OCGA § 16-13-31 (g) (1).

[10] OCGA § 16-13-31 (g) (2); *Lastohkein v. State*, 199 Ga. App. 555, 556 (2) (405 SE2d 554) (1991).

[11] See further *Brugman v. State*, 255 Ga. 407, 415 (5) (339 SE2d 244) (1986) (information that "substantial assistance" was provided by the person convicted may be brought to the sentencing court's attention by the district attorney or the defendant, or the sentencing court may make its own inquiry into the matter).

vehicle, which the police had intended to seize, was returned to her so that she could assist the police. The officer testified that after Carden was released, he received no assistance from her regarding Malik. Moreover, he reported, "The little information that we got about Malik we were unable to do anything with and I was never able to make a case on Malik."

The court noted that Carden's request for a reduced sentence relied upon the "identification, not arrest, not solving the crime, in [the] identification of an accomplice." At the end of the sentencing hearing, the court announced,

> I believe I am empowered to depart from the mandatory minimum sentence because I find that the defendant gave substantial assistance in identifying an accomplice to her crime in identifying one. Having decided I have discretion then, I can also consider information normally considered in any sentencing hearing including apparently sincere and diligent effort by her daughter who she wanted her mother to benefit from. . . . I note . . . there were drugs in [Carden's] home and all over the place. This lady was a drug dealer and she dealt drugs and a lot of drugs. And I also find she gave virtually — either virtually or literally no assistance at all once she made bond. Again, probably because she's a meth addict and didn't want to miss out getting her meth.

For trafficking in methamphetamine, the court imposed upon Carden a sentence of ten years, to serve five in prison and five on probation. One probation condition required Carden to pay a fine of $50,000.

1. The state contends that this sentence is void, arguing that the assistance provided by Carden was insufficient to permit the trial court to sentence Carden under OCGA § 16-13-31 (g) (2). We disagree.

The court was authorized to find that Carden was very cooperative with the police on the date of her arrest; that she answered each question posed to her by the police that day; that she described the arrangements underlying the sale of an ounce of methamphetamine; that she provided the police with her supplier's first name; that she told the police where she believed her supplier was then located; that the police knew that this location was less than two blocks away; that the police were able to corroborate Carden's information through her cell phone; that before Carden's cooperation, the police had no knowledge of even the existence of a drug dealer named Malik; but with Carden's information, the police were able to ascertain a location that he frequented.

The state asserts that the police were unable to apprehend Malik on the day of Carden's arrest because she warned him away from the

location she revealed to them. Further, the state points out that Carden provided no assistance regarding Malik after her release on bond, despite her agreement, and that the police were unsuccessful in apprehending him. Nevertheless, as the court noted, Carden's request for a reduced sentence did not rest upon any claim that she had aided the police in arresting or making a case against her supplier. Furthermore, the court was authorized to find that the police had assigned the Malik matter a low priority, but were aware of a place he frequented. Although Carden was unable to — or simply refused to — provide assistance to the police regarding Malik upon her bond release, nothing in OCGA § 16-13-31 (g) (2) requires that the "substantial assistance" relied upon by the defendant be provided either while released on bond or pursuant to any bond agreement.[12]

Under the circumstances in this case, we conclude that the acts relied upon by Carden were sufficient to authorize a finding that she had rendered substantial assistance in identifying an accomplice as contemplated by OCGA § 16-13-31 (g) (2).[13]

2. The state contends that the trial judge deviated from the mandatory minimum set forth in OCGA § 16-13-31 (e) (1) because of his personal disdain of mandatory minimum sentencing provisions. It cites the judge's remarks at the sentencing hearing regarding mandatory minimums: "I hate them. Every judge hates them to the bottom of our shoes."

"There is a presumption that sentence was correctly imposed, and the [appellant] has the burden of showing wherein the judge erred. Moreover, there is a presumption, in the absence of a strong showing to the contrary, that the trial judge sifts the wheat from the chaff, . . . considering only legal evidence."[14] The judge expressly put on record his reason for departing from the mandatory minimum provision: "because I find that the defendant gave substantial assistance in identifying an accomplice to her crime in identifying one." And as we have determined in Division 1 of this opinion, this finding

---

[12] See generally *Knight v. State*, 243 Ga. 770, 775 (2) (257 SE2d 182) (1979) (criminal statute must be strictly construed against the state and liberally in favor of human liberty).

[13] Cf. *Beguiristain v. State*, 187 Ga. App. 164, 165-166 (2) (369 SE2d 774) (1988) (there was *no* evidence that defendant provided "substantial assistance" where the co-defendant, but not the defendant, spoke with detectives, the co-defendant offered information during an interview, and the defendant merely invoked his right not to incriminate himself); see generally *State of Alabama v. Drewry*, 519 S2d 591, 597 (Ala. Crim. App. 1987) (issue of whether a defendant has provided substantial assistance must be decided on a case-by-case basis); *Delaware v. Howington*, 509 A2d 600 (Del. Super. Ct. 1986) ("substantial" is a relative term, not subject to a rule of thumb, and must be examined in the context in which it is used).

[14] *Tutton v. State*, 179 Ga. App. 462, 463 (2) (346 SE2d 898) (1986) (citations and punctuation omitted).

was supported. Under these circumstances, the state has failed to overcome the cited presumptions.[15]

Contrary to the state's contention, Carden's sentence is not void. Because this appeal by the state falls within no circumstance listed by OCGA § 5-7-1 (a), it must be dismissed.

*Appeal dismissed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 16, 2006.

*David McDade, District Attorney, Christopher R. Johnson, Jeffrey L. Ballew, Assistant District Attorneys*, for appellant.
*Sexton, Key & Hendrix, Joseph S. Key*, for appellee.