**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 13, 2016**

# In the Court of Appeals of Georgia

A16A0605. THE STATE v. MATHIS.

PHIPPS, Presiding Judge.

The state accused Justin Mathis of crimes in connection with circumstances pertaining to a traffic stop of his vehicle. Mathis filed a motion to suppress all evidence obtained as a result of the stop, arguing that the stop was illegal. The state argued that the stop was lawful because Mathis had no light illuminating his license plate – a violation of OCGA § 40-8-23 (d). The trial court conducted a hearing, then granted the motion. The state appeals. For reasons that follow, we vacate the judgment and remand the case for reconsideration.

Pursuant to OCGA § 17-5-30 (b), "the burden of proving that the search and seizure were lawful shall be on the state." Accordingly, "[i]t is the [s]tate's burden to

establish the existence of circumstances constituting an exception to the general

prohibition against warrantless searches and seizures."[1]

"When reviewing a trial court's ruling on a motion to suppress, an appellate

court must construe the evidentiary record in the light most favorable to the factual

findings and judgment of the trial court,"[2] and "[the trial] court's findings as to

disputed facts and credibility must be adopted unless clearly erroneous."[3] When facts

"can be ascertained definitively, for instance, from a video recording[,] . . . we give

less deference to the fact findings of the trial court."[4] And we owe no deference to the

trial court's conclusions of law.[5]

OCGA § 40-8-23 (d), the provision relied upon by the state, sets forth:

> Either a taillight or a separate light shall be so constructed and placed as
> to illuminate with a white light the rear registration plate and render it

---

[1] *State v. Massa*, 273 Ga. App. 596, 597 (615 SE2d 652) (2005), citing OCGA § 17-5-30 (b).

[2] *State v. Allen*, 298 Ga. 1, 2 (779 SE2d 248) (2015) (citation and punctuation omitted).

[3] *State v. Able*, 321 Ga. App. 632 (742 SE2d 149) (2013) (citation and footnote omitted).

[4] *Edenfield v. State*, 293 Ga. 370, 374 (2), n. 6 (744 SE2d 738) (2013).

[5] *Able*, supra at 632-633.

clearly legible from a distance of 50 feet to the rear. Any taillight or taillights, together with any separate light for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlights or auxiliary driving lights are lighted.

The sole witness at the motion hearing was the officer who had conducted the stop. On direct examination, he recounted the following. At about 2:30 a.m. on February 12, 2015, he had just completed a (different) traffic stop when he noticed Mathis's vehicle as it passed by because, as the officer testified, "I did not think the car had a tag on it." The officer got in his patrol car and followed Mathis's vehicle, until it turned into a driveway. The officer drove past the driveway, but pulled into the parking lot of a nearby gas station, where he waited. Seconds later, the officer saw Mathis's vehicle passing by the gas station. At that point, the officer testified, "I could see from the street lights illuminating his car around the gas station, that there was actually a tag on there but there was no working tag light at all on the vehicle." The prosecutor followed up with:

> Q: And then when you looked at him passing the gas station, were you able to determine whether or not he had a tag light or if the tag light was working?

A: I could tell that there was no working tag light there, that it had burnt out or doesn't have one, there was no light illuminating the tag, I knew that.

Q: So was it legible from a distance of 50 feet?

A: No.

Next, the prosecutor elicited the officer's testimony that the camera mounted to the dash of his patrol car ("dash cam") had activated when he pursued Mathis's vehicle and that the dash cam had recorded the traffic stop. That video-recording (with no sound) was presented to the trial court. Thereafter, the prosecutor asked the officer questions about the silent depictions, focusing on that portion during which the officer was pointing to the tag area of Mathis's vehicle.

Q: Is that where you were showing him that the tag light was at?

A: Yes, ma'am, that was. Saw that I reached above his tag underneath the trunk lid pointing it out to him so he would know where it is at so he can fix it.

Q: Do you recall the conversation that y'all had about that?

A: I do.

Q: What was that conversation?

A: I showed him where his tag light was and advised him it was out and he apologized and said he didn't know and said that he would fix it tomorrow.

Q: Okay. So he acknowledged that it was out?

A: Yes, he did.

The prosecutor next asked the officer about the surveillance equipment he had been wearing on his body at the time in question. The officer described "a camera that I wear on the side of my head with a little strap that holds it on your head. . . [I]t is activated from a battery pack that we wear . . . There's a little round button on front and you just push it two times and it activates, it starts recording." An audio-video recording of the pursuit of Mathis's vehicle and the traffic stop had thereby been created by that camera ("body cam"), and it was presented to the court.

On cross-examination, defense counsel asked the officer whether, in discussing with Mathis his tag light, he had "reach[ed] up under there and touch[ed] where the tag light is?" The officer answered, "I did." Defense counsel asked, "Was there a bulb in there?" The officer responded, "I do remember pointing, showing him like up under here is where the light bulb is supposed to be." Asked then whether he recalled feeling an empty socket, the officer answered, "No, I don't remember an empty socket."

Also, with the officer on the stand, defense counsel authenticated a photograph, which the officer recognized as "a still picture" from the recording made with his body cam. The still picture, the officer described, depicts "my patrol car . . . following that car that I initiated the stop on" as they drove in front of the gas station. More

5

specifically, the officer testified that as of the moment captured by the still picture, Mathis's vehicle was more than 50 feet ahead of his patrol car. The still picture was presented to the trial court.

Before resting, defense counsel asked the officer whether there was any other basis for stopping Mathis's vehicle: "In other words you didn't see him fail to maintain lane or improper turn or anything like that?" The officer answered, "No, sir."

On redirect examination, the prosecutor asked the officer two questions to evince that Mathis's tag lacked illumination:

Q: Once you got closer to the Defendant's vehicle, were you still able to see that there was not a functioning tag light?
A: Yes.
Q: Once you were at the point of 50 feet away, there was no – you readily confirmed that there was no functioning tag light?
A:Yes.

After both sides presented respective closing argument, the trial judge expressed his personal opinion about the statutory provision relied upon by the state before ultimately announcing, "I'll grant the motion," and further stating that "[i]n this case it hasn't been shown to me that [the tag light] was out because based on the

6

picture that the Defendant entered." Subsequently, in the "Order on Defendant's Motion to Suppress," the trial court set forth:

> Upon consideration of all of the testimony, the exhibits, and any argument by counsel, it is hereby ordered and adjudged that Defendant's Motion to Suppress is GRANTED [w]ith the following findings of fact: State did not show that the officer had a[n] articulable suspicion that the Defendant had violated the rules of the road. All evidence suppressed.

1. The state attacks the grant of Mathis's motion to suppress as contrary to the evidence, maintaining that "[the officer] conducted the traffic stop because of the equipment violation, specifically no tag light, which is a violation of state law."

The state summarizes the case it presented to the trial court as follows. Citing the officer's testimony, the state claims it showed:

> [The officer] parked his vehicle in the gas station parking lot, and, seconds later, observed [Mathis] pass the gas station. With the street lamps illuminating [Mathis's] vehicle, [the officer] determined that the vehicle did have a tag; however, it did not have a working tag light. [The officer] observed no light illuminating the tag and determined either the vehicle's tag light was burned out or the vehicle lacked a tag light. [The officer] confirmed that due to the lack of tag light, the tag was not

7

legible from a distance of fifty feet. . . . After being shown that the tag light was out, [Mathis] acknowledged that the tag light was out.[6]

The state characterizes the officer's testimony as "uncontradicted" and further "bolstered" by all three exhibits introduced at the hearing. Citing certain portions of the dash cam and body cam recordings, the state asserts that "it was clear there was no white light illuminating the tag." Regarding the still picture introduced by the defense, the state claims that "[it] does not show that the tag light was working." According to the state, "[n]o evidence presented indicates that the tag light was ever illuminated during the course of the Appellee driving or the traffic stop."

The trial court was not required to accept the state's position. "[W]hen a motion to suppress is heard by the trial judge, that judge sits as the trier of facts."[7] "Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject

---

[6] (Record citations omitted.)

[7] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994), cited in *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015).

any portion of the testimony."[8] "Factors such as demeanor, contradictory or inconsistent statements and evidence that an officer had 'ulterior motives' can all lead a finder of fact to disregard testimony by an officer."[9] And as explained above, deference to the fact-finding prerogative of the trial court requires an appellate court to view the evidence in the light most favorable to the findings and decision of the trial court.[10]

Notably, in the instant case, when the prosecutor reminded the trial judge near the close of the hearing of the officer's *testimony* that Mathis was driving a vehicle that had no functioning tag light, the trial judge responded that the officer's credibility was at issue. While the trial court did not go so far as to explicitly find that

---

[8] *Tate*, supra at 56 (3), cited in *Hughes*, supra at 747 (1); see also *State v. Hester*, 268 Ga. App. 501, 505 (602 SE2d 271) (2004) ("The trial judge, like the jury, is the primary guardian of the rights of a citizen. An absolute rule requiring the trial judge to believe the witnesses called by the state would contradict the American system of justice.").

[9] *Brown v. State*, 293 Ga. 787, 804 (3) (b) (2) (750 SE2d 148) (2013), citing *Tate*, supra at 56 & n. 5.

[10] See *Tolbert v. State*, 298 Ga. 147, 151 (2) (a) (780 SE2d 298) (2015), citing *Brown*, supra at 803 (3) (b) (2), for the principle that "in the context of appellate review of grant of motion to suppress, . . . deference to the fact-finding prerogative of the trial court requires an appellate court to view the evidence in the light most favorable to the findings and decision of the trial court").

the officer lacked credibility, the court ultimately *granted* the motion – "[u]pon consideration of all of the testimony, the exhibits, and any argument by counsel." Generally,[11] our obligation to view the evidentiary record in the light most favorable to the findings and judgment of the trial court requires us to assume that the trial court rejected the credibility of the officer to the extent that the officer's testimony is inconsistent with the court's decision.[12] Moreover, we have examined the dash cam

---

[11] But see Division 2, infra (considering whether trial judge's remarks at suppression hearing demonstrate that trial judge employed inapplicable test).

[12] See *Hughes*, supra (explaining that on review of motions to suppress, we generally "assume that trial judges have done their job, and . . . presume that the absence of a finding of a fact that would tend to undermine the conclusion of the trial court reflects a considered choice to reject the evidence offered to prove that fact"); *Barnett v. State*, 204 Ga. App. 491, 492 (1) (420 SE2d 43) (1992) (analyzing that the trial court, "perforce of its ruling on the suppression motion," made credibility determination) (cited in *Tate*, supra at 57 (3) and n. 6, as an example of the way reviewing courts "interpret" judicial orders in cases where the trial court, as *Tate* ascertained, did not make specific findings); see also *State v. Massa*, 273 Ga. App. 596, 597 (615 SE2d 652) (2005) (determining that, although the trial court did not explicitly reject the officer's testimony, the trial court's findings of fact and case law cited "suggest[ed] that the trial court had rejected the officer's testimony" that underlay the state's claim that the officer's intrusion was authorized); *Hester*, supra at 504 (ascertaining that the trial court chose to disbelieve the officer's testimony, where the trial court granted the suppression motion, even though the state presented an officer's testimony, which, "[i]f believed by the trial court, … would [have been] more than adequate to justify" the traffic stop); see generally *Miller v. State*, 288 Ga. 286, 289-290 (2) (702 SE2d 888) (2010) (concluding that, where the "trial court explicitly questioned the bases presented as the purpose for the stop of [the accused]," "credibility determinations played a significant part in the trial court's [suppression]

10

recording, the body cam recording, and the still photograph. Contrary to the officer's testimony that Mathis's vehicle lacked a functioning tag light, all three exhibits captured Mathis's license tag being illuminated from a lighting source affixed to his vehicle directly above the tag. Finally, the state cites the officer's testimony that when he showed Mathis where his tag light was located and advised him it was "out," Mathis acknowledged that it was "out." But the relevant portion of the body cam (audio-video) recording captured this discussion:

> Officer: If everything comes back good, I'm gonna give you a warning on that tag light, alright? It's gon' be up around here somewhere, ok?
> Mathis: Yea, I didn't even know that, ah, I mean I'll get it fixed tomorrow.
> Officer: OK.

The trial judge was not required to find from the evidence that Mathis thereupon "acknowledged" that he had no functioning tag light.

---

ruling," and thus, "[t]his credibility question lies at the very core of the trial court's ruling, and it should not be negated by [the appellate court]"). Accord *Tolbert*, supra at 152 (2) (b) ("Our obligation to view the evidentiary record in the light most favorable to the findings and judgment of the trial court requires us to assume that the trial court in this case rejected the credibility of [the officer] to the extent that [the officer's] testimony is inconsistent with its decision."), citing *Hughes*, supra.

11

Given the foregoing, the trial court was authorized to conclude that the state had failed to carry the burden imposed upon it by Mathis's motion to suppress. The *sole* articulated basis for the stop – as confirmed by the officer's testimony at the suppression hearing, as well as the state's brief on appeal – was that, because Mathis's vehicle had no light illuminating the tag, the tag was not legible. Having reviewed the evidence, and accorded due deference to the trial judge's fact-finding prerogative,[13] we conclude that the trial court was authorized to reject the state's claim that it had evinced the underlying premise (the lack of a functioning tag light) and to thus find that the state did not show that the officer had an articulable suspicion that Mathis had violated OCGA § 40-8-23 (d).

---

[13] See *Tate*, supra at 55-56 (2) and n. 5 (noting an issue of credibility concerning the officer's testimony was created, where such testimony was considered in light of other "circumstantial evidence" that was presented at hearing; further enumerating "demeanor" as a factor that can lead a finder of fact to disregard testimony by an officer that an accused was violating the law; and concluding that "[a] rational trier of fact could believe that [the officer's] testimony was not truthful and that the officer was claiming that [the accused] broke the law in order to justify an illegal stop"); *Massa*, supra; *Hester*, supra at 506 (affirming the grant of suppression motion, where the trial judge disbelieved the officer's testimony that underlay the state's claim that the traffic stop was justified; reiterating that "when no error of law appears on the record, and the trial court's ruling is based on the credibility of the oral testimony presented at the hearing, [an appellate court] must . . . leave the decision to the trial judge as the trier of fact"); *Barnett*, supra. See also *Miller*, supra.

12

2. The state contends that the trial court erred in its "interpretation and application of OCGA § 40-8-23 (d)," asserting that the trial judge's personal dislike of the statutory provision – as revealed through certain of the judge's remarks – "cloud[ed]" the ruling. According to the state, a "proper, unbiased interpretation of the statute would have led the trial court to deny [Mathis's] motion to suppress."

The state first cites that after both sides gave respective closing arguments, the trial judge remarked, "I've made no bones about the fact that this is my least favorite basis for a stop." But as the transcript shows, the trial judge went on to acknowledge that "if a Rules of the Road are violated then a pretextual stop is . . . okay [authorized]." The state also cites that the trial judge remarked that the "tag light is not a public safety issue in my opinion." But the transcript shows that immediately thereafter, the trial judge acknowledged,

> Now, that's not determinative, I know. That just means that I don't like
> the stop because I think it wreaks [sic] of pretextuality to be . . . it is just
> my opinion, I don't think it involves public safety . . . in my opinion, as
> a reason for stopping cars in the middle of the night because a tag light
> is out. And I – it is my least favorite of all the stops. Now, to the [C]ode
> section.

13

Thereupon, the trial judge noted that OCGA § 40-8-23 (d) "says either a taillight or a second light shall be constructed and placed so as to illuminate [with] white light the rear registration plate." The trial judge thus ascertained,

> So it says either a taillight or a separate light so it is "or." So a separate light is not necessary. You don't have to have a tag light on a car. If your taillights are situated so that they – when the white part that stays on on a taillight, it if illuminates the tag, then a stop can't be made based on this code section.

Next, apparently examining evidence adduced at the hearing, the trial judge determined, "This picture here (indicating) introduced here, shows that the tag light *is* visible."[14] Turning back to the statutory language, the trial court noted additionally that "the code says that so it is clearly legible from a distance of 50 feet to the rear."

As the state further cites, the trial judge then revealed, "I don't see where this becomes an issue, making a stop necessary, stopping a citizen by the police, unless it is a situation it is completely dark and that he can't read the tag." These following remarks, the state claims, demonstrate that the trial judge went on to grant the motion under an inapplicable test.

---

[14] (Emphasis supplied.)

I think in order for it to appease me, they would need to show that in a black area with the officer's headlights out and the Defendant's lights on, that the tag was not visible for 50 feet which I don't think they've shown in this case. I think that's what they would have to do to appease me is to construct a situation where wherever this car was pulled over, if you turned off the officer's headlights so they weren't shining on the car, and the Defendant's lights were on as they were when he was driving, if you stood 50 feet back and you still couldn't see the tag, then based on this code section it would justify the stop. Other than that, I just don't think it is a justification for stopping citizens on the road in my opinion. I'll grant the motion.

It was at this point during the hearing when the prosecutor reminded the judge of the *officer's testimony* that he had observed a tag light violation. The judge responded that "it is an issue, always an issue of credibility as far as his testimony early on." Before concluding the hearing, the trial judge revisited,

I have made my opinion clear about [the statutory provision] and I am going to follow the law but I'm going to be very strict on these cases, as strict as I can be on these cases because this is one area of the law I just think – as I said, I think it wreaks [sic] of pretextuality. . . . In this case it hasn't been shown to me that [the tag light] was out because based on the picture that the Defendant entered but at any rate I am . . . granting the Motion.

In the instant case, the trial judge readily conceded his personal dislike for OCGA § 40-8-23 (d) and disdain for pretextual stops, but also explicitly acknowledged that where an officer observes a traffic violation, an ensuing stop is lawful.[15] The trial judge repeatedly vowed to follow the law; he reviewed the statutory provision and examined evidence adduced, noting in particular that the officer's credibility was at issue. Although we disagree with the state that the trial court was *required* to issue a ruling in its favor,[16] we agree that certain of the trial judge's remarks indicate that the grant of the motion may have resulted at least in part from the state's failure to meet the trial judge's own preferred test. As this court has held,

> [I]t is not the role of a judge to "interpret" constitutional or statutory provisions through the prism of his or her own personal policy preferences. A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies), as well as with faithfully following the

---

[15] See generally *Carnes v. State*, 293 Ga. App. 549, 550 (667 SE2d 620) (2008) (holding that the initial traffic stop was justified by probable cause, where the officer observed a traffic violation – "regardless of the officer's subjective intent"); *Navicky v. State*, 245 Ga. App. 284, 285 (1) (537 SE2d 740) (2000) ("When an officer sees a traffic offense occur, a resulting traffic stop does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop.") (punctuation and footnote omitted).

[16] See Division 1, supra.

precedents established by higher courts. And in failing to adhere to these constraints, [a] trial court clearly err[s].[17]

Given these circumstances, we vacate the trial court's order granting the motion to suppress and remand the case for the trial court to consider whether the state carried its burden as imposed under Georgia law.[18]

*Judgment vacated and case remanded with direction. Dillard and Peterson, JJ., concur.*

---

[17] *Able*, supra at 636 (footnotes omitted).

[18] See generally id. at 634-636 (vacating grant of motion to suppress evidence seized when police entered residence, where the only conclusion to be drawn from the comments made by the judge at the motion hearing – and where the appellate record was "otherwise silent" – was that the grant was based on the trial judge's general dislike for (lawful) procedures employed by the police). Cf. *State v. Carden*, 281 Ga. App. 886, 890-891 (2) (637 SE2d 493) (2006) (rejecting state's contention that the decision resulted from the trial judge's personal disdain of a statutory provision, where the state failed to overcome the presumption that the trial judge sifts the wheat from the chaff, because although trial judge remarked that he "hate[d]" such statutory provision "to the bottom of [his] shoes," the trial judge further put on record his reason for rendering the decision, and that decision was supported by the evidence); *Merka v. State*, 201 Ga. App. 471-472 (1) (411 SE2d 357) (1991) (rejecting defendant's contention that the trial court erred by allowing "personal feelings of dislike" for his co-defendant to prejudice its decision, where the trial judge's remarks – "[I] would frankly, have a hard time believing anything [that co-defendant] said, under oath and otherwise" and that "[I] wouldn't believe anything [co-defendant] says on a stack of Bibles up here" – indicated only that the trial court was fulfilling its duty of evaluating the alleged accomplice's credibility) (punctuation omitted).