In the Supreme Court of Georgia

Decided: January 19, 2016

S15A1722. MOSLEY v. LOWE.

HUNSTEIN, Justice.

This case requires us to determine whether recent amendments to this State's criminal history record information statute, OCGA § 35-3-37, are to be applied to information regarding arrests occurring prior to the amendments' effective date. Because the statute itself makes clear that it does apply to information regarding arrests pre-dating the amendments, and because such application presents no constitutional problem, we hold that the amendments to the statute do apply here. Accordingly, we affirm the judgment of the superior court.

In February 1996, Appellee Belinda Lowe was arrested and charged in Clayton County with simple assault. When the victim thereafter failed to appear for trial, the State moved to nolle pros the charge for want of prosecution, and the court granted the motion in May 1996.

In August 2014, after the effective date of recent amendments to the

criminal history record information statute, Lowe applied to the Clayton County Sheriff's Office to have her arrest record restricted pursuant to OCGA § 35-3-37 (h).[1] The Clayton County Solicitor General denied the request, and Lowe then petitioned the superior court for judicial review, naming as respondents Clayton County Solicitor General Tasha Mosley and Clayton County Sheriff Victor Hill (hereinafter, collectively, "Mosley").

Following a hearing, the superior court determined that Mosley had erred in denying Lowe's application. Noting that its determination rested on whether the recent amendments to OCGA § 35-3-37 were to be applied retroactively to prior arrests, the court held that the General Assembly had intended for the amended statute to apply to prior arrests; that such application does not violate the constitutional prohibition on retroactive laws, see Ga. Const. of 1983, Art. I, Sec. I, Par. X; and that, under the amended statute, Lowe was eligible for record restriction as to the 1996 assault charge. Having reviewed the record and the applicable law, we agree with the superior court's conclusions.

1. The current version of OCGA § 35-3-37 was enacted as part of a

_____

[1]As discussed below, record "restriction" refers to the process of protecting from public access information regarding an individual's criminal history. See OCGA § 35-3-37 (a) (6) (defining "restriction").

2

comprehensive criminal justice reform effort spearheaded in 2011 by Governor Nathan Deal. See Meg Buice & Tamara Garcia, Crimes & Offenses, HB 1176, 29 Ga. St. U. L. Rev. 290, 294-295 (2012). Signed into law in May 2012, House Bill 1176 constituted an omnibus package of reforms to the State's criminal justice laws and procedures, which, inter alia, replaced the previous version of OCGA § 35-3-37 with the current version, effective July 1, 2013. Ga. L. 2012, p. 899, 930, 949, §§ 6-2, 9-1 (c). Under the current law, the concept of "restriction," whereby arrest records are generally shielded from public view, replaces the concept of "expungement," under which such records were destroyed outright. Compare OCGA § 35-3-37 (a) (6), with OCGA § 35-3-37 (d) (4) (2012).[2]

Under the current version of OCGA § 35-3-37, individuals are afforded the right to automatic restriction of their "criminal history record information"[3]

---

[2]Specifically, records that are "restricted" are "available only to judicial officials and criminal justice agencies for law enforcement or criminal investigative purposes or to criminal justice agencies for purposes of employment" and are prohibited from being "disclosed or otherwise made available to any private persons or businesses." OCGA § 35-3-37 (a) (6). The Georgia Crime and Information Center (GCIC), which collects and maintains criminal history record information on a state-wide basis, is responsible for implementing the restriction of records. See id. at (h).

[3]See OCGA § 35-3-30 (4) (A) (defining "criminal history record information" as "information collected by criminal justice agencies on individuals consisting of

pertaining to most arrests ultimately ending in non-conviction. OCGA § 35-3-37 (h).[4] As compared to expungement under prior law, restriction is thus available as to a broader range of criminal dispositions, with fewer exceptions. Compare OCGA § 35-3-37 (h) - (j), with former OCGA § 35-3-37 (d) (2012). In addition, record restriction generally takes effect automatically as to eligible arrests, see OCGA § 35-3-37 (h) ("[a]ccess . . . shall be restricted by the [GCIC]"), whereas expungement was accomplished only by request, see former OCGA § 35-3-37 (d) (1) (2012) (individual "may request" expungement).

As a means of addressing criminal history record information predating the effective date of these amendments, the statute expressly provides that "as to arrests occurring before July 1, 2013, an individual may, in writing, request the arresting law enforcement agency to restrict the criminal history record information of an arrest." OCGA § 35-3-37 (n) (1).[5] Such requests are to be

---

identifiable descriptions and notations of arrests, detentions, indictments, accusations, information, or other formal charges, and any disposition arising therefrom, sentencing, correctional supervision, and release").

[4]This includes instances in which no formal charges were brought as well as instances in which, post-indictment, the charges were dismissed or nolle prossed or the individual was acquitted. Id. at (h) (1) & (2).

[5]This provision is subject to certain exceptions, which are not applicable here. Id.

assessed against the expanded eligibility criteria of the amended law. Id. at (n) (2) (requiring prosecuting attorney to review requests to ascertain whether arrest meets criteria under subsection (h)). Thus, the clear and unambiguous terms of the amended statute provide for its applicability to arrests pre-dating the amendments' July 1, 2013 effective date.

2. "Even when the General Assembly clearly provides that a law is to be applied retroactively, our Constitution forbids statutes that apply retroactively so as to 'injuriously affect the vested rights of citizens.'" Deal v. Coleman, 294 Ga. 170, 175 (2) (751 SE2d 337) (2013); see also Ga. Const. of 1983, Art. I, Sec. I, Par. X (prohibiting the enactment of ex post facto and retroactive laws). As we recently made clear in Deal v. Coleman, only rights that are private in nature are capable of vesting so as to implicate the prohibition on retroactive laws. Id. at 178-181. As we also made clear in Deal v. Coleman, legislative schemes under which citizens are afforded access to public information generally create public rather than private rights. Id. at 183-184. Accordingly, such schemes may be modified retroactively with no constitutional impediment. Id. at 184.

The effect of the amendments to OCGA § 35-3-37 is to expand the right

of individuals to restrict access to their criminal history record information and, concomitantly, to limit the right of the general public to gain access to such information. The only right that has been impaired in any way is the public's right to access information. Because such a right is a public right, incapable of vesting in any particular person, the modification of this right poses no constitutional problem. See Deal v. Coleman, 294 Ga. at 184. The amended version of OCGA § 35-3-37 thus both is intended to apply and properly can be applied to Lowe's record restriction request.

3. The amended statute, in pertinent part, provides for restriction where, after indictment or accusation, "all charges were dismissed or nolle prossed." OCGA § 35-3-37 (h) (2) (A). Though certain disqualifying exceptions are enumerated, see id. at (i) (1), none of these exceptions apply here. As it is undisputed that the 1996 assault charge against Lowe was nolle prossed, and as such disposition does not fall within any of the exceptions enumerated in subsection (i) (1) of the statute, Lowe is eligible for record restriction under the current statute, and her request should have been granted.[6]

Judgment affirmed. All the Justices concur.

_____

[6]Mosley conceded below that, if the current version of the statute were held to apply, Lowe's restriction request should have been granted.