**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 6, 2018**

# In the Court of Appeals of Georgia

A17A0115. DOE v. THE STATE.

ELLINGTON, Presiding Judge.

John Doe filed a petition under OCGA § 35-3-37 (m) (2013) to seal his criminal record that is maintained by the Clerk of the Superior Court of Bulloch County. The trial court denied his motion, and Doe appeals.[1] For the reasons explained below, we reverse and remand with direction that his petition be granted.

The record shows the following undisputed facts. In 2003, when Doe was a 20-year-old college student, he was arrested by the Bulloch County Sheriff's Department

---

[1] This Court transferred this appeal to the Supreme Court of Georgia in light of the State's argument on appeal that OCGA § 5-6-34 (a) (12) (2016) and OCGA § 35-3-37 (m) (2013) as applied in this case violate the separation of powers clause of the Georgia Constitution. The Supreme Court returned the case to this Court based on its determination that the State had forfeited its constitutional challenge to OCGA § 35-3-37 (m) by failing to raise it and secure a ruling in the trial court. *Doe v. State*, 303 Ga. 237 (811 SE2d 413) (2018).

and charged with possession of marijuana. He entered a negotiated guilty plea as a first offender under OCGA § 16-13-2 (a) (2004) and received a probated sentence subject to conditional discharge without conviction. After Doe satisfied the terms of his probation, the trial court ordered in January 2008 that he be discharged without conviction and that his sentence be terminated. In May 2008, Doe submitted a formal request under former OCGA § 35-3-37 (d) that information pertaining to his arrest be expunged from the records of the Sheriff's Office.[2] The prosecuting attorney reviewed the request and agreed that the criminal record be expunged on the basis that Doe's case had been "disposed under the First Offender Act as a conditional discharge and expungement was agreed upon after completion."

---

[2] At the time Doe requested expungement of his arrest records, former OCGA § 35-3-37 (d) (4) provided that, after written request, if the prosecuting attorney determined that the statutory requirements for expungement were met, see n. 17, infra, "the agency having custody or control of a person's criminal records shall expunge the record by destroying the fingerprint cards, photographs, and documents relating exclusively to such person[,]" except for material "which cannot be physically destroyed or which the prosecuting attorney determines must be preserved under *Brady v. Maryland* [, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1962)]." See *Mosley v. Lowe*, 298 Ga. 363, 364-365 (1) (782 SE2d 43) (2016) (Under former OCGA § 35-3-37 (d), "expungement" meant that the subject records were to be "destroyed outright.") (citations omitted).

Thereafter, the General Assembly amended OCGA § 35-3-37, effective July 1, 2013.[3] As amended the Code section provides that, for most arrests that ultimately end in non-conviction, access to the arrestee's criminal history record information that is kept on a statewide basis by the Georgia Crime Information Center ("GCIC") and commonly referred to as a "GCIC report,"[4] shall be automatically restricted by GCIC under specified circumstances.[5] "Restricted" means that "the criminal history

---

[3] Ga. L. 2012, pp. 899, 930-938, 949, §§ 6-2, 9-1 (Act 709).

[4] See OCGA § 35-3-33 (2014); *Mosley v. Lowe*, 298 Ga. at 364-365 (1); *Mallery v. State*, 342 Ga. App. 742, n. 2 (805 SE2d 257) (2017); *Christian v. State*, 329 Ga. App. 244, 249 (2) (764 SE2d 573) (2014).

[5] OCGA § 35-3-37 (h), (j) (2013); see *Mosley v. Lowe*, 298 Ga. at 364-365 (1) (Under OCGA § 35-3-37 as amended effective July 1, 2013, "individuals are afforded the right to automatic restriction of their criminal history record information pertaining to most arrests ultimately ending in non-conviction.") (punctuation and footnote omitted); *Nasir v. Gwinnett County State Court*, 341 Ga. App. 63, 67 (798 SE2d 695) (2017), McMillian, J. concurring specially (noting the limited applicability of other Code sections pertaining to access to criminal history records and describing OCGA § 35-3-37 as "the primary statute restricting access" to such records.). See Luke Caselman, "Permissive Discrimination: How Committing A Crime Makes You A Criminal in Georgia," 65 Mercer L. Rev. at 770 (III), 778-780 (V) (comparing the old model of public access to criminal histories, which required the motivated party to expend the effort of physically going to an individual courthouse or law-enforcement agency to obtain a paper copy of the information from the records custodian, to the current model, where some law-enforcement agencies have put all criminal-history information online in digitized format which anyone can access while other agencies sell such digitized records in bulk and electronically transfer them to private background-check companies that create their own nationwide

record information of an individual relating to a particular charge . . . shall not be disclosed or otherwise made available to any private persons or businesses" by GCIC pursuant to statutes that provide for the dissemination of records to private persons, businesses, licensing and regulating agencies and other public bodies. OCGA § 35-3-37 (a) (6) (2013).[6] Pertinently to Doe's case, because he was given a conditional

databases of criminal-history information and market instant background checks to employers, landlords, and others). See n. 18, infra.

[6] See OCGA §§ 35-3-34 (2014) (dissemination by GCIC of records and information to private persons and businesses); 35-3-35 (2007) (dissemination by GCIC of information to public agencies, political subdivisions, authorities, and instrumentalities). Restricted criminal history record information shall, however, be available "to judicial officials and criminal justice agencies for law enforcement or criminal investigative purposes or to criminal justice agencies for purposes of employment in accordance with procedures established by [GCIC.]" OCGA § 35-3-37 (a) (6) (2013).
We note that records pertaining to arrests that ultimately end in *conviction* are treated differently under Georgia law from those ending in non-conviction. See OCGA §§ 35-3-34 (a) (1) (C) (2014) (GCIC shall be authorized to make criminal history records of in-state felony convictions, pleas, and sentences available to private persons and businesses without the consent of the person whose records are requested under specified circumstances.); (d.2) (3) (2014) (Local criminal justice agencies may disseminate criminal history records of in-state felony convictions, pleas, and sentences without the consent of the person whose records are requested under specified circumstances.); 35-3-35 (a) (1) (C) (GCIC shall be authorized to make criminal history records of in-state felony convictions, pleas, and sentences available to public agencies, political subdivisions, authorities, and instrumentalities without the consent of the person whose records are requested.); 35-3-35 (d.2) (Local criminal justice agencies may disseminate criminal history records of in-state felony convictions, pleas, and sentences without the consent of the person whose records are

4

discharge under OCGA § 16-13-2 (a) (2004), OCGA § 35-3-37 (h) (2) (B) (2013) provides:

> Access to an individual's criminal history record information . . . shall be restricted by [GCIC] for the following type[ ] of disposition[ ]: [a]fter . . . accusation . . . [t]he individual pleaded guilty to or was found guilty of possession of . . . marijuana . . . and was sentenced in accordance with the provisions of Code Section 16-13-2, and the individual successfully completed the terms and conditions of his or her probation[.]

In subsection (m), the Code section further provides that restricted records that are maintained by the clerk of court may be sealed if the court finds by a preponderance of the evidence that "[t]he harm otherwise resulting to the privacy of the individual clearly outweighs the public interest in the criminal history record information being publicly available."[7]

---

requested.); 50-18-71 (a) ("All public records shall be open for personal inspection and copying, except those which by order of a court of this state or by law are specifically exempted from disclosure."); Uniform Superior Court Rule 21 ("All court records are public and are to be available for public inspection unless public access is limited by law or by the procedure set forth" in the Rules.).

[7] In full, OCGA § 35-3-37 (m) (2013) provides:

(1) For criminal history record information maintained by the clerk of court, an individual who has a record restricted pursuant to this Code section may petition the court with original jurisdiction over the charges in the county where the clerk of court is located for an order to seal all criminal history

5

Doe's GCIC record was restricted pursuant to OCGA § 35-3-37 (h) (2) (B)

(2013). In December 2013, Doe filed a petition pursuant to OCGA § 35-3-37 (m)

(2013) to seal his criminal history record information that was maintained by the

record information maintained by the clerk of court for such individual's charge. Notice of such petition shall be sent to the clerk of court and the prosecuting attorney. A notice sent by registered or certified mail or statutory overnight delivery shall be sufficient notice.

(2) The court shall order all criminal history record information in the custody of the clerk of court, including within any index, to be restricted and unavailable to the public if the court finds by a preponderance of the evidence that:

> (A) The criminal history record information has been restricted pursuant to this Code section; and
> (B) The harm otherwise resulting to the privacy of the individual clearly outweighs the public interest in the criminal history record information being publicly available.

(3) Within 60 days of the court's order, the clerk of court shall cause every document, physical or electronic, in its custody, possession, or control to be restricted.

(4) The person who is the subject of such sealed criminal history record information may petition the court for inspection of the criminal history record information included in the court order. Such information shall always be available for inspection, copying, and use by criminal justice agencies and the Judicial Qualifications Commission.

See also OCGA § 35-3-37 (n) (1) ("[A]s to arrests occurring before July 1, 2013, an individual may, in writing, request the arresting law enforcement agency to restrict the criminal history record information of an arrest[.]"); *Mosley v. Lowe*, 298 Ga. at 364-365 (1), (2) (OCGA § 35-3-37 as amended makes it clear that the Code section applies to information regarding arrests that pre-date the effective date of the amendments, and such application presents no constitutional problem.).

Clerk of the Superior Court of Bulloch County. On February 21, 2014, the trial court denied Doe's petition on inapplicable procedural grounds.[8] Doe filed a timely motion for reconsideration of that order, and the trial court entered an order on May 29, 2014, denying the motion on the merits and reciting without elaboration that "the harm otherwise resulting to the privacy of the individual is not outweighed by the public interest in the criminal history being publicly available."

In March 2015, Doe filed a renewed petition to seal his criminal record (styled as a "renewed motion for reconsideration"[9]), supported by new testimonials and affidavits.[10] Doe submitted evidence showing that, after his arrest, he has lived in a law-abiding manner, earned his college degree in finance, earned two specialized certificates in the field (Chartered Financial Analyst and Chartered Market

---

[8] A superior court judge entered an order declining to consider the motion, apparently on the ground that the judge was not the one who sentenced Doe or who subsequently granted his conditional discharge.

[9] See Division 1, infra.

[10] The evidence included an affidavit by a former Director of Legal Services of the Georgia Bureau of Investigation who opined that "[t]here is no public interest or law enforcement purpose served in continuing to make [Doe's] court file accessible to the public. . . . Keeping [Doe's] court file public where his other criminal history information has already been restricted results in even greater harm to [his] privacy and serves little purpose to the public."

Technician), and obtained a job as a financial analyst with a large financial services firm. Doe deposed that the financial industry is heavily regulated and that he is often required to pass extensive background checks whenever he applies for or starts a new position, especially with larger firms. His criminal court file, which continues to be maintained by the clerk of court and is accessible to the public, came to the attention of a previous employer in a routine criminal background check, and he had to resign his position with that financial services firm. Doe argued that he will not be able to advance in a career in finance as long as his court file remains unsealed and accessible to the public.

At a hearing on Doe's March 2015 petition, the trial court stated its opinion that, with regard to criminal records, "there should be a transparency[,]" adding "I know that's not the law." The court expressed its "frustration with the legislative process[,]" saying that legislators enact laws to show they are "tough on crime," including strict mandatory minimum sentences, and then, because of those laws' "unintended consequences," enact other laws "piecemeal," like decriminalizing many drug offenses and providing for first offender treatment, leaving the courts to sort out the contradictions.

The State did not present any evidence at the hearing on Doe's March 2015 petition and conceded the truth of the facts Doe presented. The State argued that Doe "got everything he negotiated for" in the underlying prosecution and that, although the statutory remedy of sealing court records was not codified until later, Doe could have requested that remedy "as part of his negotiation back in '06." The State also made a "slippery slope" argument, stating that granting requests like Doe's "is not something [the State is] interested in starting doing" because "there should be some transparency" in criminal records, echoing the trial court's generalization. In its ensuing order, entered February 6, 2016, the trial court denied Doe's second petition, again stating without elaboration that "the harm otherwise resulting to the privacy of the individual is not outweighed by the public interest in the criminal history being publicly available."

Doe contends that the trial court abused its discretion by refusing to apply the statutory balancing test due to its stated disagreement with the law and the policy behind it. Further, he contends that the trial court erred in denying his petition to seal his public court record because the undisputed evidence shows that the harm to him clearly outweighs the public's interest in access to that information.

The State opposes Doe's appeal on several jurisdictional and procedural grounds, as detailed below.[11] Because the State has challenged this Court's jurisdiction, we consider those arguments before reaching the merits.

1. The State contends that this Court lacks jurisdiction because Doe did not file his notice of appeal within 30 days after the trial court's February 21, 2014 order denying his initial petition to seal records or within 30 days after the trial court's May 29, 2014 order denying his motion for reconsideration which, as noted above, was the first time the court denied Doe's initial petition on the merits. "It is well-established that there is no magic in nomenclature, and in classifying pleadings [the courts] will construe them to serve the best interests of the pleader, judging the pleading by its function rather than by its name." (Citation and punctuation omitted.) *Bell v. Figueredo*, 259 Ga. 321, 322 (381 SE2d 29) (1989).[12] We examined the pleading Doe

---

[11] See n. 1, supra.

[12] See *Kuriatnyk v. Kuriatnyk*, 286 Ga. 589, 589-590 (690 SE2d 397) (2010) (The standards applicable to a motion depends upon the issues raised, as "substance, rather than nomenclature, governs pleadings.") (citations and punctuation omitted); *Cain v. State*, 275 Ga. 784, 786 (573 SE2d 46) (2002) (Under Georgia law, the courts are not bound by the designation given to a motion by a party but "look to substance over nomenclature.") (citations and punctuation omitted); *Planet Ins. Co. v. Ferrell*, 228 Ga. App. 264, 266 (491 SE2d 471) (1997) (Pleadings, motions, and orders are to be construed according to their substance and function and not merely as to their nomenclature, being always mindful to construe such documents in a manner

10

filed in March 2015 and styled as a "renewed motion for reconsideration" and conclude that it was, in substance, a second motion to seal his criminal records, distinct from his earlier motion to seal his file.[13] Because Doe filed his notice of appeal within 30 days after the trial court denied that motion on February 5, 2016, this Court does not lack jurisdiction on the basis that his notice of appeal was not timely filed. OCGA §§ 5-6-34 (a) (12); 5-6-38.

2. The State contends that Doe failed to comply with the filing requirement of OCGA § 35-3-37 (m) because he filed a motion under his 2004 criminal case rather than initiating a new, separate action and paying a filing fee. Pretermitting whether a request to seal criminal history record information maintained by the clerk of court

---

compatible with the best interest of justice.); OCGA §§ 9-11-8 (f) ("All pleadings shall be so construed as to do substantial justice.").

[13] We reject the State's argument that designating Doe's motion as a new motion to seal is barred by the doctrine of judicial estoppel. The record does not support the State's contention that it had acquiesced in a legal position previously taken by Doe, who then assumed a contrary legal position, simply because his interests have changed, to the prejudice of the State. See *Goddard v. City of Albany*, 285 Ga. 882, 885 (2) (684 SE2d 635) (2009) (The doctrine of judicial estoppel is intended to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment," and it forbids a party, who has successfully maintained a certain position in a legal proceeding, to assume a contrary position "simply because his interests have changed . . . especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (citation and punctuation omitted).

11

should be made by way of a new action, despite the fact that subsection (m)(1) of that Code section requires such a request be filed in "the court with original jurisdiction over the charges in the county where the clerk of court is located," the State failed to raise this procedural challenge in the trial court and therefore waived the opportunity for appellate review. *Hollins v. State*, 287 Ga. 233, 233-234 (695 SE2d 23) (2010); *Earnest v. State*, 262 Ga. 494, 495 (2) (422 SE2d 188) (1992); *Capital Land USA, Inc. v. Mitsubishi Motors Credit of America, Inc.*, 308 Ga. App. 71, 74 (3) (706 SE2d 590) (2011).

3. The State contends that, if the March 2015 pleading that Doe styled as a "renewed motion for consideration" is considered a second petition to seal the court record, then that petition was nevertheless barred under the doctrine of res judicata.[14]

---

[14] Georgia's res judicata doctrine, as codified under OCGA § 9-12-40, provides:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

See *Body of Christ Church Overcoming God, Inc. v. Brinson*, 287 Ga. 485, 486 (696 SE2d 667) (2010) (The doctrine of res judicata applies where there is "(1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction.") (citation and

12

Again, the State failed to show that it asserted in the court below this ground for denying Doe's second petition under OCGA § 35-3-37 (m). Accordingly, we will not consider this argument for the first time on appeal. OCGA § 9-11-8 (c); *Gotel v. Thomas*, 277 Ga. 532, 533 (592 SE2d 78) (2004) (Because the appellants raised an estoppel argument for the first time on appeal, the appellate court was precluded from addressing the argument.).[15]

Because the State's jurisdictional and procedural arguments lack merit, as discussed above, we turn to Doe's arguments on appeal.

4. Doe contends that the trial court abused its discretion by refusing to apply the statutory balancing test due to its stated disagreement with the law and the policy behind it.

---

punctuation omitted).

[15] See also *Azarat Marketing Group v. Dept. of Administrative Affairs*, 245 Ga. App. 256, 257 (1) (a) (537 SE2d 99) (2000) ("Res judicata is an affirmative defense that must be raised in a timely filed responsive pleading." The defendant's failure to assert res judicata as an affirmative defense in an answer or a motion prior to suffering a default judgment acted as a waiver of the defense. ) (citation omitted); *Arnold v. Arnold*, 227 Ga. App. 152, 154 (2) (489 SE2d 65) (1997) (Where the appellant did not assert in her responsive pleadings in the trial court that the plaintiff's action was barred by the doctrine of res judicata, she waived the issue on appeal.) (citations omitted).

It is well settled that it is an abuse of a trial court's discretion to refuse to exercise its discretion when required, as is the case when the trial court must weigh the benefits of a proposed judicial action against the harms.[16] As noted above, OCGA

[16] See *Ramage v. State*, 259 Ga. App. 616, 617 (578 SE2d 245) (2003) (Although the decision whether to afford first offender treatment rests within the trial court's discretion, the trial court is required to exercise that discretion. It is an abdication of judicial responsibility and an abuse of discretion to refuse to consider first offender treatment where available under Georgia law and requested by the defendant and to instead apply an inflexible rule or mechanical sentencing formula. Where the trial court pronounced sentence and, when defense counsel asked about first offender treatment, responded: "He should have done that through a motion. He had the opportunity to do that earlier. After he serves his time, he can get his civil rights back[,]" despite the fact that such treatment is routinely sought orally at sentencing, the record showed that the trial court adopted an inflexible rule, which constituted abuse of discretion.); *Wilcox v. State*, 257 Ga. App. 519, 519-520 (571 SE2d 512) (2002) (Where the trial judge stated at sentencing that it "did not intend to give first offender treatment on an armed robbery[,]" this Court concluded that the trial court had adopted an "inflexible rule" with respect to the option of imposing first offender sentences in armed robbery cases and thereby abused its discretion, even though, in an order denying the defendant's motion to vacate, the court stated it had "no policy in accepting/rejecting first offender treatment in any particular class of cases."); *Jones v. State*, 208 Ga. App. 472, 472-473 (431 SE2d 136) (1993) (Where the trial judge denied the defendant's request for first offender treatment, stating: "I have never granted a first offender. I take the position that once you get to the Superior Court, this is a big folks' court, and I don't use the first offender treatment. Never have, never intend to[,]" it was clear from the plain language used by the court that it did have a mechanical sentencing policy of never granting first offender status to defendants appearing in superior court and thereby abused its discretion. ); *Cottingham v. State*, 206 Ga. App. 197, 199 (3) (424 SE2d 794) (1992) (Where the trial court used a mechanical and rigid sentencing policy, specifically, that it would never run a sentence it imposed concurrent with a sentence imposed by another court, it thereby abdicated its judicial responsibility and abused its discretion.).

14

§ 35-3-37 (m) as enacted effective July 1, 2013, provides that, upon petition by a person whose criminal history has been restricted, the trial court shall order all criminal history record information in the custody of the clerk of court to be sealed and unavailable to the public if the court finds by a preponderance of the evidence that "the harm otherwise resulting to the privacy of the [petitioner] clearly outweighs the public interest in the criminal history record information being publicly available."

As the State concedes, the statute requires the trial court to apply a balancing test and to weigh the competing interests of the harm to the petitioner's privacy against the public's interest in access to the petitioner's criminal record. In applying former OCGA § 35-3-37 (d), which provided for the expungement of criminal records under specified circumstances,[17] the Supreme Court of Georgia explained that, in

---

[17] Before former OCGA § 35-3-37 was amended effective July 1, 2013, subparagraph (d) (3) provided:

> An individual has the right to have his or her record of such arrest [, that is, an arrest followed by release without reference to the prosecuting attorney or dismissed by the prosecuting attorney without seeking an indictment or accusation,] expunged, including any fingerprints or photographs of the individual taken in conjunction with such arrest, if the prosecuting attorney determines that the following criteria have been satisfied:
> (A) The charge was dismissed under the conditions set

15

making the determination whether a petitioner's case was "an exceptional case warranting expungement," as required under the statute then in effect, "a superior court should balance the competing interests involved, namely those of the state in maintaining extensive arrest records to aid in effective law enforcement and those of the individual in being free from the harm that may be caused from the existence of those records." (Citations and punctuation omitted.) *Meinken v. Burgess*, 262 Ga. 863, 866 (2) (426 SE2d 876) (1993) (noting as an example that, "if an arrest results from any illegality or misconduct on the part of the police, the arrest record may not be indicative of the individual's criminal propensity and the maintenance of that

forth in paragraph (1) of this subsection[, that is, that the arresting agency did not refer the arrest to the prosecuting attorney for prosecution or the prosecuting attorney dismissed the charges without seeking an indictment or filing an accusation];

(B) No other criminal charges are pending against the individual; and

(C) The individual has not been previously convicted of the same or similar offense under the laws of this state, the United States, or any other state within the last five years, excluding any period of incarceration.

16

record may therefore be of little value to law enforcement") (citation and punctuation omitted).[18] Furthermore, the Court explained,

> as the apparent utility of the records decreases, there is a concomitant increase in the [petitioner's] interest in being insulated from the possible adverse consequences of the existence and dissemination of the records. This test is essentially the type of balancing of equities that a superior court performs on a daily basis, and a superior court's decision on expungement will not be disturbed on appeal unless there has been an abuse of discretion.

(Citations and punctuation omitted.) Id.

---

[18] As commentators have explained, persons have been harmed by the availability of criminal records in various circumstances, for example, when a prospective employer or landlord obtains an applicant's arrest records from a private background check and rejects the applicant on that basis. Barriers to employment and housing and other such adverse consequences have been associated with increased rates of recidivism. See Luke Caselman, "Permissive Discrimination: How Committing A Crime Makes You A Criminal in Georgia," 65 Mercer L. Rev. 759, 762-763 (I), 769-770 (III), 778 (V) (2014); Raymond L. Peeler, "Georgia Bureau of Investigation: Expunge Criminal Records When Arrested but Not Charged or Charges Dismissed; Allow Prosecutor Discretion in Expungement; Provide for Judicial Review of Prosecutor or Agency Decision Against Expunging Record; Provide for Fees for Expungement," 14 Ga. St. U. L. Rev. 182, 184 (1997); Joy Smith, "House Bill 402: Georgia Crime Information Center; Criminal Records," 5 J. Marshall L. J. 349, 364 (2011); Dallan F. Flake, "When Any Sentence Is A Life Sentence: Employment Discrimination Against Ex-Offenders," 93 Wash. U.L. Rev. 45, 56-58 (2015).

The competing interests to be considered in the context of sealing records under current OCGA § 35-3-37 (m) are the same as the interests that were to be considered in the context of expunging criminal records under former OCGA § 35-3-37 (d), but the new provisions are even more protective of arrestees' privacy interests.[19] As the Supreme Court of Georgia has explained, when the General Assembly amended OCGA § 35-3-37, the legislature relaxed the applicable statutory standard for weighing those competing interests:

> As compared to expungement under prior law, restriction [under OCGA § 35-3-37 as amended in 2013] is thus available as to a broader range of criminal dispositions, with fewer exceptions. In addition, record restriction generally takes effect automatically as to eligible arrests, whereas expungement was accomplished only by request.

(Citations omitted.) *Mosley v. Lowe*, 298 Ga. 363, 364-365 (1) (782 SE2d 43) (2016). Thus, "[t]he effect of the [2013] amendments to OCGA § 35-3-37 is to *expand* the right of individuals to restrict access to their criminal history record information and, concomitantly, to *limit* the right of the general public to gain access to such

---

[19] *Meinken v. Burgess*, 262 Ga. at 867 (3); *Grimes v. Catoosa County Sheriff's Office*, 307 Ga. App. 481, 484 (1) (705 SE2d 670) (2010).

information." (Emphasis supplied.) Id. at 365 (2).[20] See also Luke Caselman, "Permissive Discrimination: How Committing A Crime Makes You A Criminal in Georgia," 65 Mercer L. Rev. 759, 785 (VI) (2014) (The record-restriction law, OCGA § 35-3-37, as amended effective July 1, 2013, "shifts the burden of criminal history restriction away from directly affected individuals and back to the record custodians.") (footnote omitted).

In the face of this, the State insists that "Georgia's public policy favors the maintenance and dissemination of criminal records[,]" citing *Meinken v. Burgess*, 262 Ga. at 865 (2), and *Gibbs v. Bright*, 330 Ga. App. 851, 856 (2) (769 SE2d 590) (2015). As we have explained, *Meinken v. Burgess* focused on the State's interest in maintaining and accessing extensive arrest records for *law enforcement purposes*.

---

[20] We note that two months after the trial court entered the appealed order, Governor Nathan Deal signed another major criminal justice reform bill, SB 367 (Act 460), effective July 1, 2016, which included new Code sections, OCGA § 15-1-20, providing for restrictions on dissemination of criminal history information in certain cases handled by an accountability court, and § 42-8-62.1, providing additional mechanisms for limiting public access to sentencing information under the First Offenders Code, and amended § 10-1-393.5, requiring companies that post booking photographs online to remove the photographs free of charge if the record of the arrest is restricted. Ga. L. 2016, pp. 443, 449-450, 477-484, 515, §§ 1-3, 6A-1, 6C-1, 14-1. See *Austin v. State*, 343 Ga. App. 118, 123, n. 6 (807 SE2d 1) (2017) (applying OCGA § 42-8-62.1 and noting that different procedures apply under OCGA § 35-3-37).

Even under the statutes in effect when *Meinken v. Burgess* was decided, access to criminal history records (GCIC reports) by private persons and businesses was limited. See OCGA § 35-3-34 (1989). And, *Gibbs v. Bright* was decided under subsection (j) (2) of OCGA § 35-3-37, which concerns criminal cases that result in *conviction* that are later vacated by the trial court or reversed on appeal and not retried by the State within two years, unlike subsection (m), which concerns most arrests that ultimately end in *non-conviction*.[21]

Generally, there is a presumption in favor of the regularity of all proceedings in a court of competent jurisdiction, and a trial court's written order prevails over any oral conclusions made by a judge during a hearing.[22] In this case, the trial court's written order expressed its finding in the terms of the applicable statutory balancing test. The views expressed by the trial judge from the bench, quoted above, however, clearly show that the trial court was disinclined to weigh the public's interest in access to Doe's court record *in particular* against the harm to his privacy, because the trial judge favored the transparency of criminal records *in general*, while

---

[21] See n. 6, supra.

[22] *Powell v. State*, 271 Ga. App. 550, 552 (610 SE2d 178) (2005); *In re: Holly*, 188 Ga. App. 202, 203 (372 SE2d 479) (1988); *Rothstein v. Brooks*, 133 Ga. App. 52 (2) (209 SE2d 674) (1974).

20

acknowledging that the court's views were "not the law." Of course, it is the legislature's function and authority to decide public policy and to implement that policy by enacting laws, and the courts are bound to follow such laws, if constitutional, despite any contrary personal policy preferences.[23] Notably, the State offered no evidence in opposition to Doe's petition and did not even present argument regarding the public's interest in access to Doe's criminal history record in particular, but simply argued in favor of transparency in general and against the "slippery slope" of complying with OCGA § 35-3-37 (m) (2013). Although the appealed order parroted the statutory standard, we conclude that under the circumstances the record rebuts any presumption of regularity. See *Infinite Energy, Inc. v. Cottrell*, 295 Ga. App. 306, 310-311 (5) (671 SE2d 294) (2008). Because the trial court failed to exercise its discretion as required under the statute, the appealed order cannot stand.

---

[23] *Etkind v. Suarez*, 271 Ga. 352, 358 (5) (519 SE2d 210) (1999); *Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 693 (353 SE2d 186) (1987) ("Expressions of the legislature through statutes are conclusive on the question of public policy; and courts cannot declare agreements or acts authorized by statute to be contrary to public policy.") (citation omitted); *Oxford v. J.D. Jewell, Inc.*, 215 Ga. 616, 620-621 (1) (112 SE2d 601) (1960) ("The wisdom of legislation rests in the General Assembly."); *WMW, Inc. v. American Honda Motor Co.*, 311 Ga. App. 1, 5 (1) (714 SE2d 689) (2011), aff'd, 291 Ga. 683 (733 SE2d 269) (2012); *Blackmon v. DeKalb Pipeline Co., Inc.*, 127 Ga. App. 395, 397 (2) (a) (193 SE2d 635) (1972) ("[C]ourts are not authorized to disregard the plain meaning of statutes because of a supposedly unwise effect.").

21

*State v. Mathis*, 338 Ga. App. 86, 95 (2) (789 SE2d 336) (2016); *State v. Able*, 321 Ga. App. 632, 635-636 (742 SE2d 149) (2013); *Wilcox v. State*, 257 Ga. App. 519, 520-521 (571 SE2d 512) (2002).[24]

5. Doe contends that the trial court erred in denying his petition to seal his public court record because the undisputed evidence shows that the harm to him clearly outweighs the public's interest in access to that information. On appeal, the State responds that Doe's evidence was inadmissible and, even if considered, insufficient. The record shows that the State did not object to Doe's evidence and therefore waived any error. OCGA § 24-8-802 (2013) ("[I]f a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible."). As to the sufficiency of the evidence, this is a court for the correction of errors, and ordinarily it is within this Court's purview to review such a determination for legal error once made by the trial court, not to make the determination in the first place.[25] In this case, however, the prosecuting

[24] We reject the State's argument that this Court should "focus[ ] upon the ultimate correctness of [the] trial court's ruling, rather than upon the possibly erroneous reason enunciated therefor" and apply the "right-for-any-reason rule" to affirm the trial court's ruling. See Division 5, infra.

[25] *Rapid Taxi Co. v. Broughton*, 244 Ga. App. 427, 429, n. 13 (535 SE2d 780) (2000); *Taylor Auto Group, Inc. v. Jessie*, 241 Ga. App. 602, 604 (2) (527 SE2d 256)

22

attorney made no effort to adduce evidence and argument in support of a finding that the public interest in Doe's criminal history record information outweighs the harm that public availability of his records is causing him, despite having multiple opportunities to do so. Because the scales are therefore necessarily tipped in favor of Doe's affirmative showing, we conclude that further consideration on the merits by the trial court is not required. *Elrod v. State*, 222 Ga. App. 704, 705 (1) (475 SE2d 710) (1996) ("[R]emand should be principled and necessary, not automatic, delaying, and wasteful of judicial and legal resources.") (citation and punctuation omitted). Upon remittitur of this case to the court below, the trial court is directed to grant Doe's petition and order that the record concerning Doe's 2003 arrest and all related proceedings be sealed as provided in OCGA § 35-3-37 (m).

*Judgment reversed and case remanded with direction. Bethel and Gobeil, JJ., concur fully and specially*.

---

(1999); *Patel v. Gupta*, 234 Ga. App. 441, 443 (1) (507 SE2d 763) (1998).

A17A0115. DOE v. THE STATE.

BETHEL, Judge, concurring fully and specially.

I agree with the legal analysis and judgment expressed in the Presiding Judge's opinion. I write separately to emphasize that OCGA § 35-3-37 (m) (2) charges the trial court with making a factual finding, not a policy judgment. A court's findings, much like those of a jury, will almost certainly be influenced by the individual judge's experiences and predilections. Those findings may not reflect the results members of the appellate judiciary might make if they were in the seat of the trial judge. Nevertheless, because the trial judge is in a superior position to judge the credibility of the witnesses and evidence before it, we uphold its finding unless they

constitute an abuse of discretion. However, such findings must nonetheless be supported by actual evidence, not merely the court's view of the appropriate public policy. As this and other Courts have stated numerous times, when the legislature has adopted a certain policy, the entirety of the judicial branch must yield unless the policy chosen offends the Constitution.

Here, Doe presented considerable evidence regarding his privacy interest in restricting access to these records as well as the minimal public interest in maintaining public access to his criminal record in light of other restrictions already imposed by GCIC. By contrast, *the State presented no evidence in opposition* to Doe's motion and only offered the trial court what amounted to policy-oriented arguments regarding the potential dangers of granting motions like Doe's. Such arguments are not evidence, and the trial court erred to the extent it relied on such arguments in making its ruling. Moreover, the trial court's expression of its views on the wisdom of Georgia's sentencing and record restriction laws suggests an intention to deviate from the codified policy of our shared State in considering Doe's motion. We judges are not allowed to do that.

I am authorized to state that Gobeil, J., joins in this special concurrence.