**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 5, 2019**

# In the Court of Appeals of Georgia

A18A2090. LEDBETTER v. THE STATE.

DILLARD, Chief Judge.

Demetrius Dewayne Ledbetter, proceeding *pro se*, appeals an order from the State Court of Clayton County denying his motion to restrict a criminal record under OCGA § 35-3-37. For the reasons set forth *infra*, we affirm in part, vacate in part, and remand the case for further proceedings consistent with this opinion.

In March 2016, Ledbetter was charged by accusation with one count of family-violence battery and one count of simple battery, with the alleged incident having occurred on March 8, 2016.[1] Ledbetter's case was bound over from the Magistrate

---

[1] *See* OCGA § 16-5-23.1 (a) ("A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another."); OCGA § 16-5-23.1 ("If the offense of battery is committed between household members, it shall constitute the offense of family violence battery[.]"); *see also* OCGA § 16-5-23.1 (c) ("Except as provided in subsections (d) through (l) of this

Court of Clayton County to the State Court of Clayton County after the magistrate court denied bond and Ledbetter waived his right to a preliminary hearing. Ledbetter then requested a trial by jury in the state court. But in June 2016, the two charges against Ledbetter were *nolle prossed* on the State's motion, with the condition that Ledbetter have no further contact with the victim.

Thereafter, in March 2018, Ledbetter filed a motion to restrict records from the 2016 case, citing OCGA § 35-3-37, and asking the court to direct the Clayton County Police Department and Georgia Bureau of Investigation to restrict or seal the records. The motion was first filed in the Clayton County Superior Court, but then later filed in the Clayton County State Court.[2] The state court issued a rule nisi, ordering the parties to appear for a hearing on the motion set for May 11, 2018.

One month after filing the motion, in April 2018, Ledbetter filed an *amended* motion to restrict records, asking that the court's order be directed to the custodian

---

Code section, a person who commits the offense of battery is guilty of a misdemeanor."); OCGA § 16-5-23.1 (f) (2) (A) ("Upon a first conviction of family violence battery, the defendant shall be guilty of and punished for a misdemeanor[.]").

[2] The header on the motion is directed to the Magistrate Court of Clayton County, and the State asserts that the motion was also filed in that court. But in the record before us, the motion does not reflect a file stamp from that court.

of records at the Clayton County State Court, Clayton County Magistrate Court, Clayton County Sheriff's Office, Clayton County Police Department, Georgia Bureau of Investigation, and "[a]ny other 'Entity' as defined by [OCGA] § 35-3-37 (a) (2), having custody or control of any information pertinent" to the 2016 case. That same day, Ledbetter also filed a "motion for order to produce the defendant," informing the court that he had been arrested by the DeKalb County Sheriff's Department on May 2, 2017, and that he was currently being housed at the DeKalb County Jail. The purpose of this motion was to allow him to appear at the May 11, 2018 hearing scheduled on his motion to restrict records.

On April 19, 2018, the trial court issued an order denying both of Ledbetter's motions, noting that his 2016 charges were "nolle prossed for unrestrictable reasons." The court then went on to explain that Ledbetter had been "convicted of a felony in the Superior Court of Clayton County, for which he [was] wanted on a Violation of Probation warrant," and that he was "an active inmate in the DeKalb County jail at this time for other reasons as well." Accordingly, the court denied the motion to restrict records, cancelled the scheduled hearing on that motion, and denied Ledbetter's motion for an order to produce him to attend the hearing.

3

This appeal by Ledbetter follows, in which he argues that the trial court erred in (1) not providing an appropriate reason for denying his motion, (2) stating in its order that he was a convicted felon who was wanted for a probation violation, (3) treating him adversely due to his having made a first offender plea, (4) considering that he was incarcerated in another jail at the time that he filed his motion, and (5) ultimately denying his motion. We will address his enumerations of error by discussing the appropriateness of the trial court's ruling as it applied to the various custodians of record to whom Ledbetter asked the court to direct an order. To the extent the court denied Ledbetter's motion as to the sheriff's office, police department, GBI, and other "entities" under OCGA § 35-3-37 (a) (2), we affirm. But because the court erred in denying the motion as to its own clerk of court and the clerk of the magistrate court, we vacate and remand for further proceedings consistent with this opinion.

1. *The order as it relates to the Georgia Bureau of Investigation.*

As part of his petition to the trial court, Ledbetter requested that an order of restriction be directed to the Georgia Bureau of Investigation. But as to this portion of his request, the trial court did not err in denying the motion.

4

First, we turn to the statutory scheme that controls in this case—*i.e.*, the statutes that establish and govern the Georgia Crime Information Center,[3] which is a division of the Georgia Bureau of Investigation.[4] As always, in interpreting any statute, "we necessarily begin our analysis with familiar and binding canons of construction."[5] And in considering the meaning of a statute, our charge is to "presume that the General Assembly meant what it said and said what it meant."[6] To that end, we must afford the statutory text its plain and ordinary meaning,[7] consider the text

---

[3] *See* OCGA § 35-3-30 *et seq.*

[4] OCGA § 35-3-3 ("The Georgia Bureau of Investigation shall be composed of the Investigations Division, the Forensic Sciences Division, the Georgia Crime Information Center Division, and such other divisions as may be created by the board."); OCGA § 35-3-31 (a) ("There is established for the state, within the Georgia Bureau of Investigation, a system for the intrastate communication of vital information relating to crimes, criminals, and criminal activity, to be known as the Georgia Crime Information Center.").

[5] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014).

[6] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation and citation omitted); *accord Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012); *Martinez v. State*, 325 Ga. App. 267, 273 (750 SE2d 504) (2013).

[7] *Deal*, 294 Ga. at 172 (1) (a); *see State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies)[.]"); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction

contextually,[8] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[9] and seek to "avoid a construction that makes some language mere surplusage."[10] Thus, when the language of a statute is plain and susceptible of only one natural and reasonable construction, "courts must construe the statute accordingly."[11]

that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning[.]" (punctuation & citation omitted)).

[8] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 10 (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation & citation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012) (same); *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (same); *Martinez*, 325 Ga. App. at 273 (same); *see also* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words. . . ."); *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013) (Manion, J.) ("In statutory construction cases, we begin with the language of the statute itself and the specific context in which that language is used." (punctuation & citation omitted)).

[9] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013); *Martinez*, 325 Ga. App. at 273.

[10] *In the Interest of L. T.*, 325 Ga. App. at 592 (punctuation & citation omitted); *accord Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011); *Singletary*, 310 Ga. App. at 572.

[11] *Luangkhot*, 292 Ga. at 424 (1) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end."

Looking to the statute in question, OCGA § 35-3-37 allows for the "restriction" of criminal history record information under certain explicit circumstances,[12] defining "restrict," "restricted," and "restriction" as follows:

> [T]he criminal history record information of an individual relating to a particular charge shall be available only to judicial officials and criminal justice agencies for law enforcement or criminal investigative purposes or to criminal justice agencies for purposes of employment in accordance with procedures established by the center[13] and shall not be disclosed or otherwise made available to any private persons or

(punctuation omitted)); *Martinez*, 325 Ga. App. at 273 (same).

[12] *See Nasir v. Gwinnett Cty. State Court*, 341 Ga. App. 63, 67 (798 SE2d 695) (2017) (McMillian, J., specially concurring) ("While access to criminal history information is broadly granted, the primary statute restricting access is very specific, and in order to determine if access should or may be restricted, we must look to the specific provisions of [OCGA § 35-3-37] that provide for restricted access." (footnote omitted)), *cert. denied* (Sept. 13, 2017). *See generally Mosley v. Lowe*, 298 Ga. 363, 364 (1) (782 SE2d 43) (2016) ("The current version of OCGA § 35-3-37 was enacted as part of a comprehensive criminal justice reform effort spearheaded in 2011 by Governor Nathan Deal. Signed into law in May 2012, House Bill 1176 constituted an omnibus package of reforms to the State's criminal justice laws and procedures, which, inter alia, replaced the previous version of OCGA § 35-3-37 with the current version, effective July 1, 2013. Under the current law, the concept of 'restriction,' whereby arrest records are generally shielded from public view, replaces the concept of 'expungement,' under which such records were destroyed outright." (citations omitted)).

[13] The word "center" is defined to mean the Georgia Crime Information Center. OCGA § 35-3-30 (1.1).

businesses pursuant to Code Section 35-3-34 or to governmental agencies or licensing and regulating agencies pursuant to Code Section 35-3-35.[14]

Thus, the Code provides that "[a]ccess to an individual's criminal history record information, including any fingerprints or photographs of the individual taken in conjunction with the arrest, *shall be restricted by the center*" when, *inter alia*, "[a]fter indictment or accusation[,]" and "[e]xcept as provided in subsection (i)," the charges against the individual "were dismissed or nolle prossed[.]"[15] The exception to this

---

[14] OCGA § 35-3-37 (a) (6); *see also Nasir*, 341 Ga. App. at 64-65 (1) (majority) ("Providing for 'restriction' rather than 'expungement,' OCGA § 35-3-37 provides that, under certain circumstances, 'the criminal history record information of an individual relating to a particular charge . . . shall not be disclosed or otherwise made available to any private persons or businesses pursuant to Code Section 35-3-34 or to governmental agencies or licensing and regulating agencies pursuant to Code Section 35-3-35.'").

[15] OCGA § 35-3-37 (h) (2) (A) (emphasis supplied); *see also Mosley*, 298 Ga. at 364 (1) ("Under the current version of OCGA § 35-3-37, individuals are afforded the right to automatic restriction of their criminal history record information pertaining to most arrests ultimately ending in non-conviction." (footnotes & punctuation omitted)); *Doe v. State*, 347 Ga. App. 246, 246 (819 SE2d 58) (2018) ("As amended the Code section provides that, for most arrests that ultimately end in non-conviction, access to the arrestee's criminal history record information that is kept on a statewide basis by the Georgia Crime Information Center . . . and commonly referred to as a 'GCIC report,' shall be automatically restricted by GCIC under specified circumstances." (footnotes & punctuation omitted)); *Nasir*, 341 Ga. App. at 65 (1) ("The statute directs that access to 'an individual's criminal history record information' shall be 'restricted' for certain specified 'types of dispositions.' A

8

automatic and mandatory directive arises when charges were *nolle prossed* or dismissed because

> (A) [o]f a plea agreement resulting in a conviction of the individual for an offense arising out of the same underlying transaction or occurrence as the conviction;

> (B) [t]he prosecuting attorney was barred from introducing material evidence against the individual on legal grounds, including, without limitation, the granting of a motion to suppress or motion in limine;

> (C) [t]he conduct which resulted in the arrest of the individual was part of a pattern of criminal activity which was prosecuted in another court of the state or a foreign nation; or

> (D) [t]he individual had diplomatic, consular, or similar immunity or inviolability from arrest or prosecution[.][16]

In such cases, the individual's criminal history record "shall *not* be restricted[.]"[17]

---

disposition where 'all charges were dismissed or nolle prossed' is one of those." (citations omitted)).

[16] OCGA § 35-3-37 (i) (1) (A)-(D); *see Nasir*, 341 Ga. App. at 65 (1) ("Because [the appellant] is not entitled to restriction of his record under OCGA § 35-3-37 (h) (2) (A) in the first instance, we need not consider the applicability of any of the exceptions to restriction set forth in OCGA § 35-3-37 (i).").

[17] OCGA § 35-3-37 (i) (emphasis supplied).

Here, although the trial court's order says that Ledbetter's 2016 case was *nolle prossed* by the State "for unrestrictable reasons," the State's motion to *nolle prosse* does not support this conclusion. Indeed, the State's motion gives no grounds to support its request to *nolle prosse*, only checking the "other" box to specify that Ledbetter was to have no contact with the victim. Instead, it appears that Ledbetter's 2016 case was subject to *automatic* record restriction,[18] the implications of which we will further discuss below.

Thus, to the extent the trial court denied Ledbetter's motion as to the Georgia Bureau of Investigation, we affirm because the Georgia Crime Information Center was required to *automatically* restrict Ledbetter's record.[19] And even if the record was not subject to automatic restriction, nothing in the statute permits the state court to

---

[18] *See supra* notes 15-16 & accompanying text.

[19] *See supra* notes 15-16 & accompanying text. *See generally* Bonita Ann Huggins, *Give It to Me, I'm Worth It: The Need to Amend Georgia's Record Restrictions Statute to Provide Ex-Offenders With a Second Chance in the Employment Sector*, Note, 52 Ga. L. Rev. 267, 296-97 (V) (B) (2017) ("While the renaming of the process was the most obvious change, the most significant change was a burden shift. Under the previous expungement law, the onus was on the individual to request expungement of eligible offenses, but the new law requires the GCIC to restrict certain records without a request from the individual.").

order the Georgia Crime Information Center/Georgia Bureau of Investigation to restrict a record that is *not* subject to automatic restriction.

2. *The order as it relates to law-enforcement offices.*

Ledbetter also requested that the trial court direct an order of restriction to the custodians of record for the Clayton County Sheriff's Office, the Clayton County Police Department, and "[a]ny other 'Entity' as defined by [OCGA] § 35-3-37 (a) (2), having custody or control of any information pertinent" to the 2016 case. Once again, we disagree that the trial court erred in denying his request as it relates to these specific groups.

To begin with, "Entity" is defined as "the arresting law enforcement agency, including county and municipal jails and detention centers."[20] And when an individual's criminal history record is subject to restriction under OCGA § 35-3-37, the Georgia Crime Information Center is required to "notify the arresting law enforcement agency . . . within 30 days of the date access to [criminal history record] information is restricted."[21] Additionally, this statute allows an individual "who has had criminal history record information restricted" under it to "submit a written

---

[20] OCGA § 35-3-37 (a) (2).

[21] OCGA § 35-3-37 (k) (1).

request to the appropriate county or municipal jail or detention center to have all records for such individual's charge maintained by the appropriate county or municipal jail or detention center restricted," and the "appropriate county or municipal jail or detention center" must then restrict access to the information within 30 days of the request.[22]

Because it appears from the record that the criminal history record information related to Ledbetter's 2016 battery charges was subject to automatic restriction, not only was the Georgia Crime Information Center required to provide notification of same to the appropriate "entity," but if he wished to do so, Ledbetter was required to direct his own request for restriction "to the appropriate county or municipal jail or detention center."[23] Then, only if the "entity decline[d] to restrict access to such information," could Ledbetter "file a civil action in the *superior* court where the entity is located."[24] Thereafter, the entity's decision may only be upheld if the court determines "by clear and convincing evidence that the individual did not meet the

---

[22] OCGA § 35-3-37 (k) (2).

[23] *See id.*

[24] OCGA § 35-3-37 (l) (emphasis supplied).

12

criteria" for automatic record restriction under subsections (h) and (j) of OCGA § 35-3-37.[25]

Accordingly, in light of this provision, the trial court's denial of Ledbetter's motion as it pertained to the Clayton County Sheriff's Office, the Clayton County Police Department, and "[a]ny other 'Entity' as defined by [OCGA] § 35-3-37 (a) (2), having custody or control of any information pertinent" was appropriate because nothing in the record shows that Ledbetter followed the proper procedure by first making a request of the appropriate entity.[26] Additionally, even if Ledbetter had first

---

[25] *Id.*

[26] *Cf. Mosley*, 298 Ga. at 363, 366 (3) (affirming superior court's reversal of decision to deny appellant's request to county sheriff's office for restriction of arrest record). The State argues that Ledbetter's motion was appropriately denied in its entirety because he failed to follow the procedures outlined in OCGA § 35-3-37 (n) and, additionally, that this Court lacks jurisdiction over this appeal due to same. But this argument is without merit because OCGA § 35-3-37 (n) is only applicable to "arrests occurring *before* July 1, 2013[.]" OCGA § 35-3-37 (n) (1) (emphasis supplied); *see also Mosley*, 298 Ga. at 365 (1) ("As a means of addressing criminal history record information predating the effective date of these amendments, the statute expressly provides that 'as to arrests occurring before July 1, 2013, an individual may, in writing, request the arresting law enforcement agency to restrict the criminal history record information of an arrest.'" (citing OCGA § 35-3-37 (n) (1))); *Woodhouse v. State*, 336 Ga. App. 880, 881 (785 SE2d 429) (2016) ("OCGA § 35-3-37 (n) (1) . . . only makes an exception for paragraph (j) with regards to pre-July 1, 2013[ ] arrests."). And as explained *supra*, Ledbetter was charged in March 2016 for an incident that was alleged to have occurred that same month and year (well after July 1, 2013), leaving only the other procedural provisions of OCGA

13

made such a request, OCGA § 35-3-37 (l) requires a civil action that follows the entity's denial of the request to be filed in *superior* court,[27] not state court, and here we are faced with an order issued by the State Court of Clayton County.[28]

3. *The order as it relates to the clerks of court for the Clayton County Magistrate Court and Clayton County State Court.*

Finally, in Ledbetter's petition, he requests that the Clayton County State Court direct an order of restriction to the clerk of court of both that court and the Clayton County Magistrate Court. And as the order relates to the courts of Clayton County, we vacate and remand for further proceedings consistent with this opinion.

Returning to the statute, for criminal history record information maintained by clerks of court, when a record is automatically restricted under OCGA § 35-3-37, the individual "may petition the court with original jurisdiction over the charges in the

§ 35-3-37 applicable to his petition.

[27] *See* OCGA § 35-3-37 (l) ("If criminal history record information is restricted pursuant to this Code section and if the entity declines to restrict access to such information, the individual may file a civil action in the superior court where the entity is located . . . .").

[28] As mentioned *supra*, Ledbetter initially filed his petition in the superior court. The record does not reflect how or why the petition was then moved to and filed in the state court.

14

county where the clerk of court is located for an order to seal all criminal history record information maintained by the clerk of court for such individual's charge."[29] And after such a petition is received, the court must order that the information in the clerk of court's custody be "restricted and unavailable to the public" *only if* the court finds, by a preponderance of the evidence, that "[t]he criminal history record information has been restricted pursuant to this Code section; and . . . [t]he harm otherwise resulting to the privacy of the individual clearly outweighs the public interest in the criminal history record information being publicly available."[30]

Here, the State Court of Clayton County had original jurisdiction over the 2016 misdemeanor charges, which were *nolle prossed* after the case was bound over from the magistrate court.[31] But once again, although the trial court's order denying Ledbetter's petition to restrict says that his 2016 case was *nolle prossed* by the State "for unrestrictable reasons," the State's motion to *nolle prosse* in no way supports this

---

[29] OCGA § 35-3-37 (m) (1).

[30] OCGA § 35-3-37 (m) (2) (A)-(B).

[31] *See* OCGA § 15-7-4 (a) (1) ("Each state court shall have jurisdiction, within the territorial limits of the county or counties for which it was created and concurrent with the superior courts, over . . . [t]he trial of criminal cases below the grade of felony[.]").

conclusion. The motion provides no grounds to support the request to *nolle prosse*, and the State only checked a box marked "other" to specify that Ledbetter was to have no contact with the victim. But neither the State's motion nor the trial court's order granting the *nolle prosse* indicates that it was for "unrestrictable reasons."

Nevertheless, in his remaining enumerations of error, Ledbetter takes issue with the trial court's mention that he was a convicted felon who was wanted for violation of probation *and* that he was then incarcerated in another county's jail. Ledbetter also argues that the court treated him adversely due to his having made a first offender plea, although there is no direct mention anywhere in the record of Ledbetter having pleaded guilty as a first offender.

With regard to these arguments, Ledbetter's incarceration on other charges in a different county's jail would have at least been relevant to his motion for an order to produce so that he could attend the hearing scheduled on his petition to restrict records.[32] But it is unclear from the trial court's cursory (and somewhat vague) order what relevance, if any, Ledbetter's felony conviction in the Superior Court of Clayton County and his resulting probation-violation warrant had on its decision to deny his

---

[32] Although Ledbetter mentions the denial of his motion to produce on appeal, this motion was appropriately denied as moot after the trial court cancelled the hearing on his petition to restrict records.

16

petition for restriction. Nevertheless, although the record suggests that Ledbetter's 2016 misdemeanor charges were *not nolle prossed* for unrestrictable reasons, we once again recognize that the exception to automatic and mandatory record restriction arises when charges were *nolle prossed* because, *inter alia*, "[o]f a plea agreement resulting in a conviction of the individual for an offense arising out of the same underlying transaction or occurrence as the conviction"[33] or because "[t]he conduct which resulted in the arrest of the individual was part of a pattern of criminal activity which was prosecuted in another court of the state or a foreign nation[.]"[34]

Because the trial court's order as written leaves open the possibility that an exception under OCGA § 35-3-37 (i) (l) applies, we vacate the trial court's order as it relates to the county clerks of court and remand for additional proceedings, if necessary, as well as the entry of a new order that (1) provides a more thorough explanation of the reasons for the denial of Ledbetter's petition, and (2) is made under the standards set forth in OCGA § 35-3-37. In this regard, if Ledbetter's 2016 charges *were* subject to automatic restriction, the trial court must only order the clerk of court to restrict those records if the court also finds that "[t]he harm otherwise resulting to

---

[33] OCGA § 35-3-37 (i) (1) (A).

[34] OCGA § 35-3-37 (i) (1) (C).

17

the privacy of the individual clearly outweighs the public interest in the criminal history record information being publicly available."[35]

For all these reasons, we affirm the trial court's order as it relates to any request directed to the Georgia Bureau of Investigation, the Clayton County Sheriff's Office, the Clayton County Police Department, and other "entities" as defined by OCGA § 35-3-37 (a) (2), but we vacate and remand for further proceedings as to that portion of the order pertaining to the clerks of court for the Clayton County State Court and Clayton County Magistrate Court.

*Judgment affirmed in part, vacated in part, and case remanded with direction.*

*Doyle, P. J., and Mercier, J., concur.*

---

[35] OCGA § 35-3-37 (m) (2) (A)-(B); *see Doe*, 347 Ga. App. at 253 (4) (analyzing precedent from the Supreme Court of Georgia to explain that "[OCGA § 35-3-37 (m)] requires the trial court to apply a balancing test and to weigh the competing interests of the harm to the petitioner's privacy against the public's interest in access to the petitioner's criminal record. . . . The competing interests to be considered in the context of sealing records under current OCGA § 35-3-37 (m) are the same as the interests that were to be considered in the context of expunging criminal records under former OCGA § 35-3-37 (d), but the new provisions are even more protective of arrestees' privacy interests"); *see also Doe*, 347 Ga. App. at 257 (Bethel, J., concurring specially) (writing separately to "emphasize that OCGA § 35-3-37 (m) (2) charges the trial court with making a factual finding, not a policy judgment").